

*William Cafaro, Esq.*
*Partner*
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

**LAW OFFICES OF WILLIAM CAFARO**

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

*Matthew S. Blum, Esq.*
*Of Counsel*
ADMITTED IN NY
Email: mblum@cafaroesq.com

December __29__, 2022

<u>*Via ECF*</u>
Hon. Hector Gonzalez, U.S.D.J
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  Valdez et al v. Kings Hwy Equities LLC et al
          Case No.: 22-cv-5172-HG

Your Honor:

  This is a request for approval of the Settlement Agreement[1] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Negotiated Settlement Agreement and Release[2] ("Agreement") is appended as Exhibit "1."

**I.  Background and Claims**

  According to the Plaintiffs, Yanidel Valdez ("Valdez") and Sandra Mercado ("Mercado") (together "Plaintiffs") the Defendants own and operate a hotel in Brooklyn. According to Ms. Valdez she worked for the Defendants for approximately four months from April 3, 2022 until August 5, 2022. According to Ms. Mercado, she worked for the Defendants for approximately one week, from July 23, 2022 until July 30, 2022. Throughout their short employment, the Plaintiffs worked for the Defendants as housekeepers where they were responsible for cleaning, disinfecting and taking out the trash from hotel rooms. According to her best recollections, Ms. Valdez was required to work five days per week, Friday through Tuesday, inclusive from 9:00AM until 5:00PM. Ms. Valdez was paid $15.00 per hour. According to her best recollections, Ms. Mercado worked five days from 5:00PM until 10:00PM and from 5:00PM until 12:00PM on the sixth day. Ms. Mercado was not paid for her labor. According to the Plaintiffs, the Defendants did not pay them for their final

---

[1] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

2 This Action was filed as a putative class and collective action. The Parties intend for the settlement to only cover the claims of the Named Plaintiffs in this action.

workweek. Given these claims, Plaintiffs filed a complaint for unpaid minimum wages, unpaid straight time wages, liquidated damages and statutory damages under the FLSA and NYLL.

Defendant Kings Hwy Equities LLC ("Defendant Kings") disputed the Plaintiffs' claims that they are owed this money. Defendant Kings challenged the hours that Plaintiffs' claim that they worked, how they were paid, and whether there were any wage statement violations. Further Defendant Kings disputes that it had a policy of failing to pay employees for their final workweek, rather it had a policy of requiring employees to pick up their final checks from the office or confirm where they want their final checks to be sent. Lastly, Defendant Kings further alleged that due to the ongoing COVID-19 pandemic it was unable to withstand a large judgment.

Prior to the Defendants filing an Answer in this action, the Parties began settlement negotiations. After numerous discussions between the Parties, the attached settlement was reached.

## II.   The Settlement Reached Between the Parties

According to the allegations in the Complaint, the Plaintiffs' claims are worth a total of $23,860.00 which is inclusive of all back wages, 100% liquidated damages, and statutory damages under the NYLL. Specifically, Ms. Valdez' claims are worth $17,120.00 while Ms. Mercado's claims are worth $6,740.00. Therefore, the settlement of $14,000.00, the Plaintiffs are recovering is approximately **59%** of their alleged damages.

The Agreement contains a limited release and does not contain any confidentiality or non-disparagement clauses. Moreover, the Plaintiffs will receive their settlement proceeds within 10 business days of the Court approving the Agreement.

Plaintiffs believe that the $14,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting the parties to the time and expense of more extensive discovery and ongoing litigation. While Plaintiffs were confident that they would be able to challenge the Defendants' inferences successfully, the Plaintiffs are uncomfortable testifying in a formal setting. If their testimony had been rejected by the trier of fact, their recovery could be significantly minimized. Lastly, each settling party is represented by counsel experienced in wage and hour practice.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential wage and hour claims in the totality of the circumstances. In addition, the parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiffs prefer to receive their proceeds without the inevitable delay and significant risks that continued litigation would entail.

## III.   The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60,*

*LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotations omitted).  In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.  *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

As stated above, the proposed settlement represents **59%** of the Plaintiffs' wage claims and is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles the Plaintiffs faced.  It will also enable Plaintiffs to avoid anticipated burdens and risks in going forward.  *See, Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

Avoidance of Anticipated Burdens and Expenses

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome.  *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012).  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).  The settlement agreement avoids anticipated burdens in this action. Specifically, it avoids the time and expense of a jury trial.  Moreover, as stated above, the Plaintiffs are uncomfortable testifying in Court, if their testimony were not believed, it is likely that a trier of fact would reduce their reward.  In light of the totality of the circumstances, the Settlement Agreement represents a reasonable compromise of the *bona fide* disputes in this matter.

Litigation Risks

Importantly, Plaintiffs' maximum claimed recovery would be far from inevitable had this case proceeded to trial. If the Defendants' evidence was taken as true, they would substantially reduce the Plaintiffs' recovery. This makes the amount of post-trial recovery uncertain.  Settlement permits the Plaintiffs to avoid the risk of obtaining no recovery or substantially reduced recovery at trial.  *See, Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 U.S. Dist. LEXIS 211003, at *4-5 (S.D.N.Y. Dec. 21, 2017).  Lastly, there are also serious concerns about collectability as the Company has received reduced revenue during the ongoing COVID-19 pandemic.

Whether the Settlement Agreement is the Product of Arm's-Length Bargaining

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel..." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).  The Parties participated in arm's length settlement discussions to arrive at this settlement. These discussions

occurred privately through their counsel. As such, because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

Possibility of Fraud or Collusion

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations between counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### IV. Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering the unpaid wages and statutory violations under the FLSA and NYLL. Under the retainer agreement between Plaintiffs and their counsel, Plaintiffs' counsel is entitled to a one third fee on the gross recovery of $14,000.00, which equates to $4,666.67 plus out of pocket costs and disbursements. These costs total $542.00 and consist of the filing fee and fee for service of process. Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read the *Cheeks* decision to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3-4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). The foregoing notwithstanding, the undersigned submits as follows in support of the requested fee:

Plaintiffs' counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. I have personally expended **14.6** hours in the prosecution of this case. *See* Exhibit 2, Attorney Kumar's time records. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013 and the Managing Attorney of the firm since 2017. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk

for several employment law firms, including Schwartz & Perry, LLP[3] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. I was further admitted to the Federal District Court of New Jersey in 2019.  Since joining the firm, I have been responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution.  Further, while working at the firm, I have conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in employment law disputes, including wage and hour matters. Moreover, I have been selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017-2022, inclusive.  I was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and I am currently a member of the National Employment Lawyers Association – New York Chapter.  Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate the undersigned at rates of $300.00 to $400.00 per hour.

My normal hourly rate for wage and hour actions is $300.00 per hour and the Plaintiffs are requesting this rate for my work in this case.  This rate is reasonable based on my experience.  *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8 (E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience).

At the requested rate, the total lodestar is **$4,380.00**.  We are further requesting an additional $542.00 in reasonable out of pocket disbursements incurred by the Firm and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The out of pocket expenses are:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 402.00 | Cost for filing in Court |
| Servco Process | $ 80.00 | Service on Corp Def |
| Gotham Process | $ 60.00 | Service on Ind Def |
| Total | $ $542.00 | |

The preceding out of pocket expenses are fair and reasonable and ordinarily charged to the file in wage and hour actions.

Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See, In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015).  Moreover, a multiplier is used to compensate Plaintiffs' counsel for time

---

[3] Now called Schwartz Perry & Heller, LLP

that is required administering the settlement. *See, Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases, they have awarded multipliers that are even higher. *See, Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also, Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 U.S. Dist. LEXIS 211166, at *4 (S.D.N.Y. Dec. 14, 2018) (approving a lodestar multiplier of 6.7 over Defendants' objection). Here, the multiplier requested is approximately **1.07** which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiffs' counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorneys' fees in FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

### V.  Conclusion

For the reasons set forth above the Parties request that the Court approve the settlement as reflected in the Settlement Agreement and So Order the Parties' proposed Stipulation and Order of Dismissal with Prejudice. Plaintiffs further request that the Court approve the attorneys' fee and cost award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

By      Amit Kumar, Esq.
        *Attorneys for Plaintiffs*

108 West 39th Street, Suite 602  
New York, New York 10018  
(212) 583-7400  
[Akumar@CafaroEsq.com](mailto:Akumar@CafaroEsq.com)

CC:

All Counsel of Record (via ECF)